UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COLY D. DANIELS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CAROLYN W. COLVIN Acting Commissioner of the Social Security Administration, | ) ) ) No. 1:12-cv-00316-SEB-MJD |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Coly Daniels ("Daniels") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends **REVERSING** the decision of the Commissioner and **REMANDING** this matter for proceedings consistent with this opinion.

### I. Procedural History

Daniels filed an application for DIB and SSI on February 25, 2008, alleging an onset of disability as of February 1, 2005. Daniels's applications were denied initially on April 4, 2008 and denied on reconsideration on September 8, 2008. Daniels timely requested a hearing, which was held before Administrative Law Judge James R. Norris ("ALJ") on June 18, 2010. The ALJ denied Daniels's request for a supplemental hearing to evaluate the opinions of Dr. Vitug,

1

Daniels's treating psychiatrist, who was not present at the hearing. The Appeals Council denied Daniels's request for review on February 3, 2012, making the ALJ's decision the final decision for purposes of judicial review. Daniels filed his Complaint with this Court on March 12, 2012.

## II. Factual Background and Medical History

Daniels, now fifty-three, has a long history of polysubstance abuse, beginning with alcohol and marijuana at the age of eleven. He served in the United States Army from 1978 through 1982, during which time he was sexually abused by his roommate. The record also reflects that Daniels began using cocaine on a regular basis in 1985, at the age of twenty-five. Throughout the years, the VA has treated Daniels for numerous physical[1] and mental ailments. Daniels's mental diagnoses include polysubstance abuse and dependence, bipolar disorder, mood disorder, antisocial personality disorder, and post-traumatic stress disorder (PTSD).

Dr. Vitug, Daniels's treating physiatrist at the VA Medical Center since 1993, diagnosed him with bipolar disorder and polysubstance abuse and dependence. In 2004 Daniels received a twenty-one day substance abuse treatment at the VA Medical Center, his fourth treatment there. By 2004 Daniels was divorced, homeless, and jobless, having lost his job as a dump truck driver due to a verbal altercation with his supervisor. After that treatment, Daniels lost his driver's license after causing accidents while stopped because he forgot where he was going. During outpatient visits with Dr. Vitug and other VA health professionals, Daniels reported being afraid to cook and clean at his girlfriend's house, where he often resides with her and their young children, because he believed he would burn the house down or flood it.

In April of 2008, Dr. Larson, the first reviewing State Agency Psychologist, reviewed Daniels's record upon his application for DIB and SSI. Dr. Larson found that Daniels met the

---

[1] Because Daniels only disputes the ALJ's findings regarding his mental impairments, the facts are limited to the discussion of the mental impairments and will not discuss the physical impairments.

2

criteria for listing 12.09—Substance Abuse Disorder, and evaluated the disorder under listing 12.04—Affective Disorders—due to his bipolar disorder. Dr. Larson reported severe, marked limitations in the categories of maintaining Social Functioning and maintaining Concentration, Persistence, or Pace. Dr. Larson also stated that "[i]t is likely [Daniels's] bipolar and recent memory problems are related to his chronic use of these substances." [R. at 306.] Four months later, in August of 2008, Dr. Dixon of the Disability Determination Bureau examined Daniels, diagnosing him with mood disorder and antisocial personality disorder, observing his difficulties with focus, credibility, mood swings, and personal interactions. [R. at 440-43.] In September of 2008, Dr. Horton, another State Agency reviewing psychologist, evaluated Daniels under listing 12.04 for his bipolar disorder and 12.08—Personality Disorders. Dr. Horton found Daniels to be credible, but without severe psychosis. [R. at 458.]

In January of 2009, Daniels re-admitted himself into the VA's Substance Abuse Residential Rehabilitation Treatment Program (SARRTP). At the time of his 2009 SARRTP admission, Daniels reported drinking alcohol twenty-five out of the prior thirty days, smoking cocaine twenty-five out of the prior thirty days, and smoking marijuana twelve out of the prior thirty days. After two weeks of treatment in the on-site program, VA Psychologist George Stegeman noted that Daniels "appear[ed] to suffer from an underlying psychiatric disorder." [R. at 539.]

After his release from SARRTP in 2009, Daniels continued to use the VA's services as an outpatient. Dr. Vitug noted in December of 2009 that Daniels did not report excessive substance abuse after being released from SARRTP, but he did admit to drinking forty ounces of beer two to three times per week. Daniels also reported experiencing recurring nightmares three times per week and an inability to interact socially with his children. At his hearing in June of

2010, Daniels reported taking Depakote and Risperidone for his bipolar disorder. Daniels also testified that he was unable to think clearly, often bumping into walls in the house, and that he was unable to stay awake for more than four hours at a time, taking several substantial naps throughout the day. On bad days, Daniels testified, he was unable to interact with anyone, especially his children, and these days occur about four times per week. Daniels estimated that, if he had a job, he would have to call out sick twice a week because of his bipolar disorder.

Also at the hearing, Robert Barber, a vocational expert, testified regarding Daniels's ability to perform past relevant work as a dump truck driver. The Department of Transportation categorizes dump truck driver as a profession with a Specific Vocational Preparation (SVP) level of 2, meaning that a worker should be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." [Dkt. 17 at 7, citing to the DOT Dictionary of Occupational Titles (4th Ed,, Rev. 1991).] Mr. Barber also testified that someone who missed two days per week and who was off-task twenty-five percent of the time would not be able to hold such a position.

Dr. Olive, an expert witness at the hearing, read excerpts from the VA's reports and concluded that "while Mr. Daniels may well have an underlying mood disorder . . . it's virtually impossible to tell . . . what would be the related functional limitations from any psychiatric illness." [R. at 54.]. Dr. Olive added that Daniels's cognitive impairment is "probably a manifestation of substance abuse," but concluded that he couldn't know that for certain. [Id. At 54-55.] While she was not present at the hearing, Dr. Vitug submitted a signed statement concluding that, if he were to abstain from drugs or alcohol, Daniels would still be disabled and unable to work full time on a regular and sustained basis. [R. at 623.]

4

### III. Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability according to 42 U.S.C. § 423.[2] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the Commissioner determines that the claimant's impairment meets any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant *is* disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his past relevant work, he is not disabled; (5) if the claimant can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520.

If the ALJ determines that the claimant is disabled but there is medical evidence of a drug addiction or alcoholism, the ALJ must, at step three, determine whether the addiction is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(a). To determine whether the addiction is a material factor, the ALJ must determine whether the claimant will still be disabled if he stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(1). To make this determination, the ALJ must evaluate which severe limitations would remain if the claimant stopped using alcohol and whether the remaining limitations would be disabling. 20

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

5

C.F.R. § 404.1535(b)(2). If the ALJ determines that the claimant's remaining limitations are disabling, then he is disabled independent of the addiction. 20 C.F.R. § 404.1535(b)(2)(ii). If the ALJ determines that the remaining limitations are not disabling, then the ALJ must find that the addiction is a contributing factor material to the determination of disability, and, therefore, the claimant is not disabled in step three. 20 C.F.R. § 404.1535(b)(i).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The standard of substantial evidence is measured by whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). This court may not reweigh the evidence or substitute its judgment for that of the ALJ, but only determine whether or not substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; he must "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### IV. The ALJ's Decision

The ALJ first considered whether Daniels would be disabled based on all of his impairments, including his substance abuse and dependence. Applying the five-step analysis, the ALJ found that (1) Daniels had not engaged in substantial gainful activity since the alleged onset date of February 1, 2005, and (2) since the alleged onset date, Daniels suffered from three severe

6

impairments: substance abuse disorder and dependence on alcohol, substance abuse disorder and dependence on drugs, and bipolar disorder. Although several practitioners diagnosed Daniels with a variety of other ailments, the ALJ analyzed Daniels's case according to Dr. Vitug's diagnosis because "Dr. Vitug treated the claimant regularly over a period of years," adding that "[a]s none of the [other] sources is a treating physician, the opinions cannot be given controlling weight." [R. at 27-28.]

Third, the ALJ determined that, including the substance abuse disorders, Daniels's impairments met sections 12.04 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)). Accordingly, Daniels was "disabled," but the ALJ found that Daniels would not have an impairment or combination of impairments that met or medically equaled any of the listed impairments if he were sober and drug free. As such, his substance abuse was deemed a contributing factor material to the determination of disability, and Daniels did not automatically qualify for DIB and SSI under step three. At step four, the ALJ further determined that, without substance use, Daniels would have the residual capacity to perform limited work that involves "simple, routine, and repetitive tasks and does not involve complex or detailed material or tasks." [R. at 30.] With these limitations in mind, the ALJ determined at step four that, if Daniels refrained from alcohol and substance abuse, he would be able to perform his past relevant work as a dump truck driver. With this determination, it was unnecessary to proceed to step five, as Daniels was not disabled within the meaning of the SSA.

## V. DISCUSSION

The central issue in this matter is whether there is substantial evidence to support the ALJ's determination that Daniels's substance abuse is a contributing factor to Daniels's bipolar disorder. Daniels raises two relevant arguments as to why this Court should reverse the decision

of the ALJ: (1) the ALJ relied on insufficient testimony from the vocational expert in concluding that Daniels has the capacity to perform his past relevant work, and (2) the ALJ misinterpreted the opinion of a non-examining medical expert, thereby improperly rejecting the opinion of Daniels's treating physician. The Court examines these issues separately.

> **A. Substantial evidence does not support the ALJ's step-four determination that Daniels has the capacity to perform past relevant work.**

When a vocational expert is called to testify, he may provide both relevant evidence regarding the work in question and expert opinion testimony in response to a hypothetical question about the claimant's specific condition. 20 C.F.R. § 404.1560(b)(2). In either of these situations, the vocational expert may analyze the information "either as the claimant actually performed it or as generally performed in the national economy." *Id.*

At the hearing, Robert Barber, the vocational expert, first provided relevant evidence regarding the work in question. Within the fifteen years leading up to the hearing, Daniels had engaged in substantial gainful activity as a dump truck driver, which qualified as past relevant work. *Id.* § 404.1560(b)(1). Mr. Barber reported that the Department of Transportation rates a dump truck driver as SVP 2, which provides that a worker should be able to carry out "detailed but uninvolved . . . instructions," according to the DOT's Dictionary of Occupancy Titles. In his decision, the ALJ clearly limits Daniels to work that "does not involve complex or detailed material or tasks." Because a dump truck driver is an "unskilled" profession, the ALJ concluded that Daniels has the capacity to continue his past relevant work. [R. at 35.]

Substantial evidence does not support the ALJ's decision that Daniels has the general capacity to perform work as a dump truck driver. The DOT's description of the demands of Daniels's past relevant work is clearly incompatible with the ALJ's limitations, as the job requires *detailed instructions* and the ALJ himself limited Daniels from work that involves

*detailed tasks*. The ALJ's conclusion that Daniels could nonetheless perform his past relevant work because it is considered "unskilled" is not a sufficiently "accurate and logical bridge," so the ALJ's analysis according to how the profession is performed in the national economy is flawed. *Dixon*, 270 F.3d at 1176.

Additionally, upon cross examination by Daniels's attorney, Mr. Barber further answered questions that referred to the claimant's specific condition. Mr. Barber testified that a hypothetical dump truck driver who suffers from periods during which he cannot interact with people, who might miss two days of work each week because of these periods, and who takes medication that causes him to lose focus and be off-task twenty-five percent of each day would not be able to continue working as a dump truck driver. [R. at 71.] These hypothetical questions referred directly to Daniels's own testimony at the hearing, but the ALJ did not acknowledge or reference this testimony at all in his decision.

The ALJ also improperly ignored Mr. Barber's testimony regarding the effects that Daniels's specific condition would have on his ability to hold work as a dump truck driver. The skill level of a profession may not accurately determine a claimant's ability to perform, as "[a] claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding one." Titles II & XVI: Capability to Do Other Work-Themedical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, 1983-1991 Soc.Sec.Rep.Serv. 343 (S.S.A 1985). Accordingly, the ALJ must take into account the claimant's specific limitations. *See, e.g.*, *Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011) ("[t]he ALJ must provide vocational experts with a complete picture of a claimant's residual functioning capacity"); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). Because of the ALJ's failure to take into account both his own conclusion of Daniels's limitations and

9

those of the vocational expert, the ALJ made an improper step-four finding, and the case should be remanded.

> **B.    Substantial evidence does not support the ALJ's step-three determination that Daniels would not be disabled under the SSA if he were to remain sober.**

Because of their "detailed, longitudinal picture" of and "unique perspective" to the claimant's medical impairments, a treating physician's opinion is generally given controlling weight. 20 C.F.R. § 404.1527(c)(2). The Seventh Circuit upholds an ALJ's decision to not give the treating physician's opinion controlling weight "where that physician did not have the requisite expertise, familiarity with the patient, or longitudinal relationship, or where the opinion was inconsistent with *objective* medical evidence like x-rays." Oakes v. Astrue, 258 F. App'x 38, 44 (7th Cir. 2007) (emphasis added) (citing White v. Barnhart, 415 F.3d 654, 658-59 (7th Cir.2005); Skarbek v. Barnhart, 390 F.3d 500, 503-04 (7th Cir.2004); Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir.2004)).

However, "a contradictory opinion of a non-examining physician does not, by itself, suffice to provide the evidence necessary to reject a treating physician's opinion." Id. at 45 (citing Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir.2003)). When such contradictory evidence exists, the ALJ must give "great weight" to the opinion of the treating physician, unless it is "seriously flawed." Bauer v. Astrue, 532 F.3d 606, 608 (7th Cir. 2008) (citing Clifford v. Apfel, 227 F.3d 863, 869-71 (7th Cir.2000). Because of the episodic nature of bipolar disorder in particular, isolated evidence of higher functionality does not contradict longitudinal evidence of lower functionality. See id. at 609 (noting that several "hopeful remarks" in treatment notes do not discount the severity of the claimant's bipolar disorder); Kangail v. Barnhart, 454 F.3d 627, 629 (7th Cir. 2006) (finding that medical witness's observations of normal behavior did not contradict a finding of severe impairment because "bipolar disorder is episodic").

10

Daniels argues that, at step three, the ALJ improperly found that Daniels would not meet one of the impairment listings if he were to remain sober. This is in direct contradiction with the opinion of Daniels's treating physician, Dr. Vitug, which in no uncertain terms states that Daniels would still be disabled and unable to work on a regular and sustained basis if he were to abstain from drugs or alcohol with marked limitations in social functioning and concentration, persistence, or pace. [R. at 615-23.] In the applicable section of his decision, the ALJ relies on the opinions of Dr. Dixon, who consulted with Daniels only once, and Dr. Horton, who merely reviewed Daniels's records, to find that Daniels would not have a severe impairment if he were sober—Dr. Vitug's opinion is not mentioned or discussed. [R. at 28-30.] This is inconsistent with the ALJ's own prior conclusion that Dr. Dixon and Dr. Horton's diagnoses of antisocial personality disorder would not be given controlling weight *because* neither is a treating physician. [R. at 28.] This inconsistency is a clear example of improper cherry-picking of the evidence by the ALJ, where "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

Daniels further asserts that the ALJ wrongfully found Daniels capable of performing a full range of work, albeit with limitations. One of the central issues here is whether the ALJ was correct in rejecting the treating opinion of Dr. Vitug in favor of other opinions of record, namely Dr. Olive, the expert witness at Daniels's hearing. Dr. Olive, after reading into the record a selection of Daniels's plethora of medical reports, concluded that it was impossible to measure Daniels's residual functioning capacity and that, while Daniels's impairments could be a manifestation of substance abuse, Dr. Olive could not know for certain. [R. at 54-55.] This

11

conjecture is consistent with the State Agency Psychologist Dr. Larsen's note that Daniels's bipolar disorder was likely related to his use of cocaine and alcohol. Later Dr. Olive adds to his testimony that "[i]f someone's doing drugs, **common sense** tells us that those kinds of problems, those kind of symptoms are probably going to be made more intense." [R. at 57, emphasis added.] Although Dr. Olive's "common sense" may support the ALJ in a finding of non-disability, it is in complete disagreement with well-established medical, and legal, doctrine: "What is clear is the reverse—that bipolar disorder can precipitate substance abuse." Kangail v. Barnhart, 454 F.3d at 629 (7th Cir. 2006) (extensively citing to various medical journals).

     The ALJ also notes in support of his rejection of Dr. Vitug's opinion that VA social worker Shaffer observed in March of 2008 that Daniels might be employable once he "gets a grip on his alcohol problem." [R. at 33.] In December of 2009, as the ALJ notes, Daniels reported to the VA that he consumes a forty-ounce beer two or three times per week. [R. at 34.] Because of this admission, the ALJ rejects Dr. Vitug's opinion that Daniels remained sober from June of 2009 through June of 2010. This is an incorrect rejection. Merriam Webster defines "sober" as "sparing in the use of food and drink" or "not addicted to intoxicating drink," which denotes a *limited* use—not a lack of use. Merriam Webster's Collegiate Dictionary 1183 (Fredrick C. Mish et al. eds., 11th ed.2009), available at http://www. merriam-webster.com. When Daniels entered into the VA's substance abuse treatment program in January of 2009, he reported consuming alcohol to the point of intoxication six times per week. [R. at 35.] In determining that Daniels's self-reported, limited use of alcohol in December of 2009 was inconsistent with Dr. Vitug's medical opinion of sobriety, the ALJ erroneously "played doctor." Id.; see also Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir.2000); Green v. Apfel, 204 F.3d 780, 781 (7th Cir.2000).

12

The relevant inconsistencies in this case do not lie between the treating physician and other medical evidence of record; they lie between the ALJ's treatment of the medical testimony and legal doctrine. Although some contradictory testimony may exist, Dr. Vitug's conclusions were not seriously flawed and should not have been dismissed and rejected in step three of the ALJ's analysis. Therefore, the ALJ did not rely on substantial evidence in his denial of Daniels's request for benefits, and remand is appropriate.

## VI. CONCLUSION

For the aforementioned reasons, substantial evidence does not support the ALJ's determination that Daniels is not disabled. The Magistrate Judge recommends that the Commissioner's decision should therefore be **REVERSED** and **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated: 06/26/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana


Distribution:
All Electronically Registered Counsel